| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: February 3, 2023 1:43 PM<br>FILING ID: 77337B9656563<br>CASE NUMBER: 2023CV30390 |
| **Plaintiffs:**  KAREN TANNER-SMITH AND MARK SMITH<br><br>v.<br><br>**Defendant:**  NATIONWIDE AFFINITY INSURANCE COMPANY OF AMERICA. | ▲COURT USE ONLY ▲ |
| **Attorneys for Plaintiffs:**<br>Jonathan S. Sar, No. 44355<br>Thomas J. Archer, No. 49884<br>Daly & Black, P.C.<br>3200 Cherry Creek S. Drive, Suite 520<br>Denver, CO 80209<br>Phone: (303) 835-4572<br>Fax: (888) 375-0630<br>Email: jsar@dalyblack.com<br>　　　　tarcher@dalyblack.com<br><br>and<br><br>Richard D. Daly, No. 51941<br>John Scott Black, No. 50440<br>Daly & Black, P.C.<br>2211 Norfolk Street, Suite 800<br>Houston, TX 77098<br>Phone: (713) 655-1405<br>Fax: (713) 655-1587<br>Email: rdaly@dalyblack.com<br>　　　　jblack@dalyblack.com | **Case Number:**<br><br>**Division:**<br><br>**Courtroom:** |

## COMPLAINT FOR DAMAGES AND JURY DEMAND

Plaintiffs, Karen Tanner-Smith and Mark Smith, through their attorneys, Daly & Black, P.C., for their original complaint against Defendant, Nationwide Affinity Insurance Company of America ("Nationwide"), allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Karen Tanner-Smith is the owner of the subject property located at 8750 North Sundown Trail, Parker, Colorado 80134-6912 (the "Property").

2.      Plaintiffs are the beneficiaries of a property insurance policy covering the Property issued by Nationwide with the policy number 7205HRO29868 (the "Policy").

3.      At all times described in this Complaint, Nationwide was engaged in the business of insurance in the State of Colorado.

4.      At all times described in this Complaint, Plaintiffs were insured by Nationwide.

5.      All the acts described in this Complaint occurred in the State of Colorado under Colorado law, and involve an insurance policy governed by Colorado law.

6.      This Court has personal and subject matter jurisdiction over this case under C.R.S. §§ 13-1-124(1)(a), (c), and (d).

7.      Venue is proper in this district under C.R.C.P. 98(c)(1), which Plaintiffs designate as the place of trial of this action.

## GENERAL ALLEGATIONS

### A.      THE PROPERTY

8.      The Property was built in 2007 and Ms. Tanner-Smith purchased the Property on November 16, 2007.

9.      The Property is a one-story, single-family residence constructed of wood-framed exterior walls covered with painted stucco and is supported on a concrete foundation system with a walk-out basement.

10.      The Property has hip and gable roofs constructed with a pitch of approximately 8/12 and covered with architectural/laminated fiberglass asphalt shingles.

11.      The Property has an attached garage located at the southwest corner and a covered patio and elevated deck at the rear.

12.    A photo of the Property from the Douglas County Assessor's Office website is below:



13.    On June 26, 2015, a roofing company, D-7 Roofing LLC, replaced the Property's roof for $32,965.50.

**B.    2020 CLAIM**

14.    On or about July 3, 2020, a wind and hailstorm struck the Parker, Colorado area.

15.    On July 16, 2020, Plaintiffs filed a claim with their insurance company, Nationwide, which assigned the claim number 772520-GK (the "2020 Claim").

16.    On July 22, 2020, Nationwide's independent adjuster, Zack Rymnick with Ladder Now, inspected the Property and noted the following:

Roof Findings
No wind or hail damage was found on any slope. No storm related tree damage was found on any slope. No non-storm related tree damage was found on any slope. No decking damage was found on any slope. No damage was found on any hip & ridge. No damage was found to the roof accessories. All accessory counts can be found in the tables below.

Exterior Findings
There are 5" painted aluminum seamless gutters present. Gutters are nailed through the drip edge or gutter apron. There are 100.0 total linear feet of 3" x 4" painted aluminum seamless downspouts and 20.0 linear feet are damaged.

17.    Mr. Rymnick did not note wear and tear to the Property's roof.

18.     Mr. Rymnick did not note deterioration to the Property's roof.

19.     Mr. Rymnick did not note granule loss to the Property's roof.

20.     Mr. Rymnick noted that each of the Property's roof slopes was in fair condition as follows:

House Roof Damage and Condition Table

| Direction | Hail | Wind | Tree | Condition |
|---|---|---|---|---|
| Front | 0 | 0 | | Fair |
| Right | 0 | 0 | | Fair |
| Back | 0 | 0 | | Fair |
| Left | 0 | 0 | | Fair |

21.     Chad Crawford with Nationwide prepared an estimate for $1,007.98 to repair the hail-damaged gutters and windows.

22.     Nationwide did not make a payment on the 2020 Claim because the damage was below the $1,500.00 deductible.

C.     **2021 CLAIM**

23.     On or about August 19, 2021, a wind and hailstorm struck the Parker, Colorado area.

24.     During the hailstorm, the Property was damaged by, among other things, large hailstones. The damage included, but is not limited to, damage to the Property's roof system, gutters, and window screens.

25.     The hail damage is evidenced by widespread circular-shaped areas of granule loss and dents to gutters and screens.

26.     On June 10, 2022, Plaintiffs filed a claim with Nationwide, which assigned the claim number 384250-GN (the "Claim").

27.     Upon information and belief, Nationwide assigned the Claim to an adjuster, who inspected the Property in June 2022.

28.     On June 23, 2022, Nationwide sent Plaintiffs the following coverage decision letter:

Our review showed that the roof accessories, gutters and window screens sustained damage from hail. Coverage for these damages are provided under this claim, subject to the deductible.

However, our investigation also determined that the dwelling roof has ongoing wear, tear and deterioration in the form of granular loss. As shown in the above

policy language, coverage for the damages caused by or resulting from wear, tear, deterioration. is specifically excluded or not afforded under your Nationwide Affinity Insurance Company of America policy. Therefore, we must deny coverage for the damages caused by or resulting from wear, tear, deterioration.

29.    Tanika Randall with Nationwide prepared an estimate for $5,374.58 RCV to repair the soft roof accessories, gutters, and window screens.

30.    After subtracting $514.77 depreciation, the Policy's $1,500.00 deductible, and $55.20 salvage retention, Nationwide issued a $3,304.61 payment.

31.    Upon information and belief, in July 2022, Plaintiffs contacted Nationwide and requested a re-inspection.

32.    Nationwide engaged an engineering firm, ProNet Group, Inc. to inspect the Property and "determine the cause of the reported damage to the roof covering of the residence that reportedly occurred on or about August 20, 2021."

33.    On July 28, 2022, Brady M. Beall, P.E. with ProNet Group, Inc., inspected the exterior and roof of the Property.

34.    Mr. Beall prepared a report of findings dated August 20, 2021 ("ProNet Report").

35.    The ProNet Report included the following conclusions:

•    The roof shingles covering the residence had not been damaged by wind-related forces.

•    The roof shingles covering the residence had not been damaged by hailstone impacts, including from an August 19 or August 20, 2021 storm event, or any other hail event.

•    The granule loss and overall condition of the roof shingles was caused by long-term deterioration of the shingles that resulted from long-term exposure to seasonal weather cycles, thermal fluctuations, and aging of the roof materials.

36.    The ProNet Report included meteorological data that showed "significant hail with maximum-sized hailstones of 1.0-inch diameter" fell near the Property on August 19, 2021.

37.    The ProNet Report contains the statement: "Researchers have found that the damage threshold for heavyweight, laminated asphalt shingles is 1.25-inch diameter hailstone." The ProNet report does not cite to the relevant engineering research or describe it at all.

38.    The ProNet Report contains an extensive discussion of asphalt shingle granule loss, including the statements that "granule loss is normal" and "can also be caused by other

means that can sometimes be mistaken for hail damage[,]" such as age-related deterioration, mechanical damage, and bird droppings.

39.    The ProNet Report implies but avoids stating the obvious fact that hail impact can cause granule loss.

40.    Mr. Beall observed "circular and irregular-shaped areas of generalized granule loss . . . on all slopes" but opined that "[t]here were no signs of deformation of the shingle at the locations of these circular areas of granule loss."

41.    The ProNet Report explains ProNet's reasoning as follows:

The lack of evidence of hailstones meeting or exceeding the magnitude of the damage threshold for laminated shingles and the lack of widespread hail-related damage to the shingles (e.g., bruises or fractures) led to our finding that the roof shingles covering the residence had not been damaged by hailstone impacts."

42.    The ProNet Report also includes a discussion of "functional damage" and "non-functional marks (e.g., cosmetic). . ."

43.    The Policy does not require that hail "bruise or fracture" roof shingles to constitute covered damage.

44.    The Policy does not distinguish between "functional" damage and "cosmetic" or "non-functional" damage.

45.    The Policy does not include a "cosmetic damage" exclusion or an exclusion for granule loss caused by hail impact.

46.    Granule loss caused by hailstone impact is a covered loss under the Policy.

47.    The ProNet Report inexplicably ignores the possibility that the observed widespread circular-shaped areas of granule loss were caused by hail.

48.    The ProNet Report does not explain how a roof that was in "fair condition" as of July 22, 2020, could have extensive granule loss that "was caused by long-term deterioration" as of July 28, 2022.

49.    Upon information and belief, on or about August 19, 2022, Ms. Randall informed Plaintiffs that, based on the ProNet Report, there was no hail damage to the Property's roof.

50.    Upon information and belief, in August 2022, Plaintiffs contacted a law firm, Riggs, Abney, Neal, Turpen, Orbison & Lewis, PC. ("Riggs Abney") regarding the Claim.

51.    On September 9, 2022, Riggs Abney sent Nationwide a demand letter for full payment of the Claim.

52.     On October 3, 2022, Ms. Randall sent the following letter, re-affirming Nationwide's coverage decision as follows:

> I have received and reviewed your correspondence and request for re-consideration for the replacement of the dwelling roof. I have also reviewed all of the file documentation and reports which supports our original decision that there is no damage to the dwelling roof as a result of wind or hail. The damage to the dwelling roof was determined to be a result of wear, tear and deterioration and is excluded per your policy.

53.     Nationwide favored its "original decision" over the decisions of several contractors who inspected the Property and observed what they believed to be hail damage.

54.     Nationwide refused Plaintiffs' request to see photos of the roof Nationwide obtained in connection with the 2020 Claim.

55.     The actual scope of work and cost of reasonably necessary roof repairs is likely between $50,000 and $100,000 and includes replacement of the roof system, gutters, and window screens.

56.     Prior to the hailstorm, the severe hail damage described above was not present.

57.     Upon information and belief, Nationwide confirmed the age and condition of the Property, including the Property's roofing system, as part of the underwriting process before issuing the Policy to Plaintiffs.

58.     The Claim was unreasonably denied and delayed because Nationwide wrongfully refused to issue adequate payment to repair the visible hail damage the hailstorm caused to the Property and failed to address significant areas of damage to the Property including, but not limited to, the roof.

59.     Nationwide wrongfully and unreasonably determined there was no hail damage to the roof shingles of the Property.

60.     Nationwide wrongfully and unreasonably determined the roof shingles of the Property revealed wear, tear, and deterioration with no signs of wind or hail damage.

61.     Nationwide wrongfully and unreasonably refused to pay the fair value of the Claim.

62.     Nationwide wrongfully denied payment to repair the Property even though the Policy provided coverage for losses such as those suffered by Plaintiffs. Nationwide also failed to adequately investigate Plaintiffs' claim for damages, resulting in the unreasonable denial of the Claim and unreasonable delays in the handling of the Claim.

63.     Nationwide failed to perform its contractual duties to adequately compensate Plaintiffs under the terms of the Policy for the damages sustained to their Property, although due

demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiffs.

64.    Nationwide's conduct constitutes a breach of the insurance contract between Nationwide and Plaintiffs and an unreasonable denial of covered benefits.

## FIRST CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

65.    Plaintiffs reallege and incorporate the previous allegations as if fully set forth herein.

66.    A contract of insurance existed between Nationwide and Plaintiffs; namely, the Policy.

67.    The Policy provides replacement cost coverage, which generally provides coverage for the actual and necessary cost of repair or replacement, without a deduction for deprecation, subject to the policy's limit of liability.

68.    Nationwide was required to determine the replacement cost of the required repairs.

69.    The Policy requires Nationwide to pay replacement cost benefits for covered losses.

70.    The Policy requires Plaintiffs to pay insurance premiums in exchange for replacement cost coverage, which Plaintiffs did.

71.    Upon information and belief, the Policy also provides "ordinance and law" coverage for up to 10% of the dwelling limit, which generally provides coverage for loss to the undamaged portion of the Property caused by enforcement of any ordinance or law.

72.    Hail and wind damage are covered losses under the Policy.

73.    The damage caused by the hailstorm described above constitutes a covered loss under the Policy.

74.    Nationwide breached its contract by, among other things, failing to pay Plaintiffs for their losses.

75.    Nationwide did not pay what the Policy required, including because Nationwide wrongfully and unreasonably determined the roof shingles of the Property revealed wear, tear, and deterioration with no signs of wind or hail damage and failed to provide the actual, necessary, and reasonable cost of repair or replacement to the Property for covered losses.

76.    Without limitation, Nationwide failed to provide sufficient funds to repair the damage to Plaintiffs' Property, including the damaged roof shingles.

77.    Nationwide did not pay what the Policy required, including because Nationwide determined, without a reasonable basis, the roof of the Property revealed no signs of wind or hail damage when the actual cost to repair the roof is likely between $50,000 and $100,000 and includes replacement of the roof system, gutters, and window screens.

78.    Such failures constitute a breach of contract.

79.    As a result of Nationwide's actions and/or inactions and breach of contract, Plaintiffs have sustained damages and losses in amounts to be proved at trial.

**SECOND CLAIM FOR RELIEF**
**(VIOLATION OF C.R.S. §§ 10-3-1115 AND 1116)**

80.    Plaintiffs reallege and incorporate the previous allegations as if fully set forth herein.

81.    At all times described in this Complaint, the following statute of the state of Colorado was in effect:

> **§ 10-3-1115. Improper denial of claims--prohibited--definitions--severability**
>
> (1)(a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

82.    C.R.S. § 10-3-1116(1) provides a remedy for such denial or delay of payments in the form of "reasonable attorney fees and court costs and two times the covered benefit."

83.    Among other things, Nationwide unreasonably denied payment of insurance benefits owed to Plaintiffs by failing to pay the actual, necessary, and reasonable funds to repair and/or replace damaged portions of the Property caused by the storm described above.

84.    Nationwide based this denial on, among other things, an unreasonable determination that the Property's roof revealed no signs of wind or hail damage, when, in fact, significant hail damage did occur. Nationwide's determination was in turn based on its unreasonable reliance on the ProNet Report, which contained flawed methodology and an improper standard for what constitutes "damage" to asphalt shingles.

85.    Nationwide has unreasonably denied and delayed payment to Plaintiffs in violation of C.R.S. § 10-3-1115(1)(a).

86.    Nationwide is subject to the provisions of C.R.S. § 10-3-1116(1) for "reasonable attorney fees and court costs and two times the covered benefit" in addition to damages claimed

elsewhere in this Complaint.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs pray for damages against Nationwide as follows:

a.    Damages for breach of contract, including the value of benefits Plaintiffs were entitled to receive under the Policy and were not paid by Nationwide; damages for delayed and denied payments; consequential damages; and reasonable interest on such delayed and denied payments;

b.    Reasonable attorney fees and court costs and two times the covered benefit under C.R.S. § 10-3-1116(1);

c.    An award of all interest, including pre- and post-judgment interest;

d.    Costs and expenses; and

e.    Such other and further relief as this Court may deem just, equitable, or proper.

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted February 3, 2023.

/s/ Thomas J. Archer
Jonathan S. Sar
Thomas J. Archer
Daly & Black, P.C.
3200 Cherry Creek S. Drive
Suite 520
Denver, CO 80209
Phone Number: (303) 835-4572
Fax Number: (888) 375-0630
Email: jsar@dalyblack.com
         tarcher@dalyblack.com

and

/s/ Richard D. Daly
Richard D. Daly
John S. Black
Daly & Black, P.C.
2211 Norfolk Street, Suite 800
Houston, TX 77098
Phone Number: (713) 655-1405
Fax Number: (713) 655-1587

Email:  rdaly@dalyblack.com
        jblack@dalyblack.com

***Attorneys for Plaintiffs***
***Karen Tanner-Smith and Mark Smith***

Plaintiffs' Address:
8750 North Sundown Trail
Parker, Colorado 80134-6912

11